UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEPHEN KNUTH,
an individual,

      Case No.:

      Plaintiff,

v.

NELNET GUARANTOR
SOLUTIONS, INC.,
a/k/a NELNET, INC.,
a corporation,

      Defendant.
_____/

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff, STEPHEN KNUTH (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendant, NELNET GUARANTOR SOLUTIONS, INC., a/k/a NELNET, INC. (hereinafter, "Defendant"). In support thereof, Plaintiff states:

## INTRODUCTION AND PRELIMINARY STATEMENT

This is an action for damages brought by an individual consumer for Defendant's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Telephone Consumer Protection Act and the Restrictions on Use of Telephone Equipment, 47 United States Code, Section 227 (hereinafter, the "TCPA"), and FCC Rule, 47 C.F.R., Section 64.1200, *et. seq.* (hereinafter, "FCC Rule").

## JURISDICTION AND VENUE

1.    Jurisdiction of this Court arises under 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

1

2. Venue in this District is proper because Defendant transacts business in this District, and the conduct complained of occurred in this District.

3. At all material times herein, the conduct of Defendant, complained of below, occurs in Duval County, Florida.

4. At all material times herein, Plaintiff is an individual residing in Duval County, Florida.

5. At all material times herein, Defendant is a domestic corporation existing under the laws of the state of Nebraska with its principal place of business located at 121 South 13th Street, Suite 201, Lincoln, Nebraska 68508.

## FDCPA AND FCCPA STATUTORY STRUCTURE

6. The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

7. The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

8. Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information

regarding a debt *directly or indirectly* to any person *through any medium.*" 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

9. For example, the FDCPA and FCCPA each prohibit a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, and prohibits a person from communicating directly with a debtor known to be represented by an attorney in an attempt to collect a consumer debt. *See* 15 U.S.C. §§ 1692(c)-(d) and Fla. Stat. §§ 559.72(7) and (18).

10. Also, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt, prohibits a debt collector from using unfair or unconscionable means to collect a consumer debt, and prohibits a debt collector from collecting any unauthorized amount from a consumer debtor. *See* 15 U.S.C. §§ 1692e-e(10) and 1692f-f(1).

## TCPA STATUTORY STRUCTURE

11. Congress enacted the TCPA in an effort to restrict pervasive use of automated or prerecorded telephone calls that invade consumers' personal privacy. Pub L. 102-243, § 2, Dec. 20, 1991, 105 Sta. 2394 (1), (5), and (10).

12. Congress intended to prevent automated or pre-recorded telephone calls as "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id*. at §§ (5) and (12).

13. Under the TCPA, any person who initiates calls to any number assigned to a cellular telephone service using any automated telephone dialing system or artificial or prerecorded voice without the recipient's prior express consent is liable to the recipient for actual monetary loss, or

up to $500.00 in damages for each violation of the TCPA, whichever is greater. 47 U.S.C. § 227(b)(3)(B).

14. Under the TCPA, the court may increase the damage award up to three (3) times, or up to $1,500.00, for each willful or knowing violation of the TCPA. *Id* at § 227(b)(3)(C).

15. Furthermore, the Restrictions on Use of Telephone Provision, 47, U.S.C., Section 227(b)(1) prohibits any person:

> (A) To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, … or any service for which the called party is charged for the call.

16. Additionally, Plaintiff alleges that Defendant's continued calls to his Cellular Telephone after January 4, 2017 using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV") were placed in violation of the FCC Rule, 47 C.F.R. Section 64.1200(a)(1).

17. One of the regulations prescribed under the TCPA is the Federal Communications Commission ("FCC")'s rule, 47 C.F.R Section 64.1200 ("FCC Rule"), that implements the TCPA. The FCC originally promulgated the FCC Rule in 1992, since which time it has subsequently been amended as telecommunications technology has changed.

18. In its current state, the FCC Rule, 47 C.F.R. § 64.1200, provides, in relevant part, that:

> (a) No person or entity may:
>
> (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using

> an automatic telephone dialing system or an artificial or prerecorded voice;
>
> . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

## GENERAL ALLEGATIONS

19. At all material times herein, Defendant is a "creditor" as defined by Florida Statutes, Section 559.55(5).

20. At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8).

21. At all material times herein, Defendant attempts to collect a debt, specifically an alleged amount owed arising under a student loan account serviced by Defendant and ending in account number -2947 (hereinafter, the "Debt").

22. At all material times herein, the Debt is a consumer debt, resulting from a transaction for goods or services and incurred primarily for personal, household, or family use.

23. At all material times herein, Defendant is a "person" subject to Florida Statutes, Section 559.72. *See* Fla. Stat. §§ 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

24. At all material times herein, Defendant's conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

25. At all material times herein, Defendant acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

26. All necessary conditions precedent to the filing of this action occurred or Defendant waived or excused the same.

## FACTUAL ALLEGATIONS

27. Defendant made telephone calls, as more specifically alleged below, to Plaintiff's cellular telephone number 954-XXX-6537 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

28. Plaintiff the possessor, controller, and regular user of a Cellular Telephone with assigned telephone number 954-XXX-6537.

29. At no time herein did Defendant possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

30. Further, if Defendant contends it did possess such consent at one point in time, Plaintiff nonetheless repeatedly revoked any alleged prior existing consent the moment Plaintiff demanded that Defendant cease calling Plaintiff's Cellular Telephone and again revoked any alleged prior express consent the moment Plaintiff advised Defendant that he was represented by an attorney with respect to the Debt and provided Defendant with said attorney's contact information.

31. Additionally, if Defendant contends the below-referenced phone calls were made for "informational purposes only," Defendant nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using

an ATDS, a PTDS, or an APV.

32. On or about January 3, 2017, Plaintiff sent a facsimile transmission (hereinafter, "Fax of Representation") to Defendant advising Defendant that Plaintiff was represented by legal counsel, provided legal counsel's contact information, and requested that all communications with respect to the Debt be sent to Plaintiff's legal counsel. Please see attached a true and correct copy of said Fax of Representation and corresponding delivery confirmation labeled as Exhibit "A."

33. Moreover, Plaintiff's Fax of Representation explicitly revoked any prior existing consent Defendant possessed to make calls to Plaintiff's Cellular Telephone number using an ATDS, PTDS, or APV.

34. Defendant received the Fax of Representation.

35. Defendant made each below-referenced call from telephone number 954-XXX-6537, unless noted otherwise.

36. Additionally, Defendant made each below-referenced call directly to Plaintiff despite Defendant possessing actual knowledge of Plaintiff's legal counsel with respect to the Debt and despite Defendant possessing such legal counsel's contact information.

37. On or about January 4, 2017, Defendant called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt and left a voicemail requesting Plaintiff return Defendant's call.

38. On or about January 5, 2017, Plaintiff called Defendant to revoke consent to be contacted on his Cellular Telephone; in response, Defendant's employee or representative advised Plaintiff that his monthly payment was late with respect to the Debt.

39. On or about January 5, 2017, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt and left a pre-recorded

voicemail requesting Plaintiff return Defendant's call.

40. On or about February 28, 2017, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

41. During the immediately-aforementioned call, Defendant's employee or representative advised Plaintiff that Defendant did not use an ATDS and confirmed that calls were not to be made to Plaintiff's Cellular Telephone.

42. That same day, on or about February 28, 2017, Plaintiff called Defendant and a different employee or representative of Defendant's advised Plaintiff that an ATDS, PTDS, or APV was utilized on all delinquent accounts. Defendant's employee or representative also advised Plaintiff that the collection calls would continue despite Plaintiff's requests that Defendant's calls cease.

43. On or about March 27, 2018, Plaintiff retained Leavengood, Dauval & Boyle, P.A., d/b/a LeavenLaw (hereinafter, "Undersigned Counsel") with respect to the Debt.

44. On or about March 27, 2017, Undersigned Counsel sent a certified letter of representation (hereinafter, "Certified Letter of Representation") to Defendant advising of Undersigned Counsel's representation of Plaintiff with respect to the Debt and providing Defendant with actual knowledge of Undersigned Counsel's contact information. Please see attached a true and correct copy of said Certified Letter of Representation with return receipt as Exhibit "B."

45. Moreover, the Certified Letter of Representation *again* explicitly revoked any prior existing consent Defendant possessed to make calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV. *See* Ex. B.

46. Defendant received the Certified Letter of Representation.

47. On or about March 29, 2017, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

48. During the immediately-aforementioned call, Plaintiff *again* expressed his desire to no longer receive calls made by Defendant using an ATDS, a PTDS, or an APV.

49. On or about April 5, 2017, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

50. During the immediately-aforementioned call, Plaintiff yet again informed Defendant that he did not wish to receive Defendant's calls.

51. On or about January 30, 2018, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

52. During the immediately-aforementioned call, Plaintiff answered the call and a live agent did not respond. After not hearing the voice of a live agent, Plaintiff disconnected the call.

53. On or about March 16, 2018, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

54. During the immediately-aforementioned call, Plaintiff answered the call and a live agent did not respond. After not hearing the voice of a live agent, Plaintiff disconnected the call.

55. On or about May 11, 2018, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

56. During the immediately-aforementioned call, Defendant's employee or representative advised Plaintiff that Plaintiff's account was 30 days past due and demanded payment from Plaintiff on the Debt.

57. On or about October 11, 2018, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

58. During the immediately-aforementioned call, Defendant's employee or representative advised Plaintiff that Plaintiff's account was 30 days past due and demanded payment from Plaintiff on the Debt.

59. In response, Plaintiff *again* requested that Defendant cease calling his Cellular Telephone.

60. On or about November 13, 2018, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

61. During the immediately-aforementioned call, Defendant's employee or representative stated that he wanted to discuss repayment options with Plaintiff. In response, Plaintiff, *again*, requested that Defendant cease calling his Cellular Telephone.

62. On or about December 14, 2018, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

63. During the immediately-aforementioned call, Defendant's employee or representative stated that he wanted to discuss repayment options with Plaintiff regarding the Debt and that Plaintiff's account was over 60 days past due.

64. In response, Plaintiff *again* requested that Defendant cease calling his Cellular Telephone.

65. On or about December 21, 2018, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

66. During the immediately-aforementioned call, Defendant's employee or representative stated that she wanted to discuss repayment options with Plaintiff regarding the Debt and that Plaintiff's account was over 60 days past due.

67. In response, Plaintiff *again* requested that Defendant cease calling his Cellular

Telephone.

68. On or about December 27, 2018, Defendant *again* called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

69. Collectively, between January 2017 and December 2018, Defendant repeatedly made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV despite Plaintiff's repeated requests that Defendant cease calling Plaintiff regarding the Debt,.

70. As a direct result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, and annoyance, believing that repeatedly requesting that Defendant cease calling Plaintiff regarding the Debt was wholly ineffective, that retaining legal counsel with respect to the Debt and advising Defendant of the same was wholly ineffective, and that the frequent, repeated Debt collection attempts would simply have to be endured.

71. It is Defendant's corporate policy to use an ATDS, a PTDS, or an APV when attempting to collect consumer debts, including the Debt (hereinafter, "Corporate Policy").

72. Defendant employed its Corporate Policy of using an ATDS, a PTDS, or an APV when Defendant made the calls to Plaintiff's Cellular Telephone as alleged herein.

73. Defendant made the calls to Plaintiff's Cellular Telephone with no effective way for Plaintiff to remove his Cellular Telephone number from Defendant's telephone dialing system despite Plaintiff's repeated efforts to accomplish the same.

74. Defendant made calls, or caused calls to be made, to Plaintiff with no effective way for Defendant to remove the telephone number from Defendant's telephone dialing system.

75. Defendant's Corporate Policy provides no effective way for a consumer to effectively revoke any prior existing consent to be called by an ATDS, PTDS, or APV to make Defendant cease calling a consumer's or debtor's cellular telephone.

76. Defendant's Corporate Policy and procedures are structured as to continue to call individuals like Plaintiff using an ATDS, a PTDS, or an APV, regardless of how many times said individuals request that Defendant cease calling a cellular telephone regarding a debt owed to or serviced by Defendant.

77. Upon information and belief, Defendant engaged in a pattern and practice of unlawful debt collection and invasion of privacy, repeatedly and willfully calling consumers' cellular telephones in an attempt to collect debts, using an ATDS, a PTDS, or an APV despite lacking consumers' prior express consent to do so.

78. Defendant willfully, knowingly and repeatedly undertakes these practices to increase revenue and profitability at the direct expense of consumers' livelihoods and privacy.

79. Based on Defendant's pattern and practice described herein, this Court should grant significant and substantial punitive damages sufficient enough to prevent Defendant from continuing this pattern and practice and to deter such similar future conduct in the Middle District of Florida.

80. Plaintiff states that the imposition of a substantial punitive damage award is required in order to force Defendant to comply with well-established federal and state privacy and debt collection laws.

81. Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

82. Due to both professional and personal commitments, as well as the continued and increasing stress associated with the continued barrage of debt collection calls, Plaintiff was not able to record the specifics on each and every call placed to Plaintiff. Plaintiff asserts, however, that the above-referenced calls are but a sub-set of the calls made in violation of the FCCPA, the

FCC Rule, and the TCPA.

83. Furthermore, Defendant is in the best position to determine and ascertain the number and methodology of Debt collection calls made to Plaintiff.

84. Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

85. United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made, directly or indirectly, using any ATDS, PTDS, or APV to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

86. Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made, directly or indirectly, using any ATDS, PTDS, or APV to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

87. As of the date of this complaint, Defendant did not initiate a law suit in an effort to collect the Debt. Likewise, no final judgment with respect to the Debt has been obtained by, or transferred to, Defendant.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**

Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

88. Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by collecting a consumer Debt from Plaintiff through means which can reasonably be

expected to abuse or harass Plaintiff.

89. Specifically, despite Plaintiff's exhaustive efforts in writing and over the phone to request that Defendant cease calling his Cellular Telephone regarding the Debt, Defendant repeatedly made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV between January 2017 and continues to do so up through the date of filing of this Complaint, having called Plaintiff at least a dozen times in its attempts to collect the Debt.

90. Furthermore, despite Plaintiff advising Defendant, in writing on at least two separate occasions, that he retained legal counsel with respect to the Debt and provided Defendant with Plaintiff's legal counsels' contact information, Defendant continued to communicate directly with Plaintiff in an attempt to collect the Debt by calling Plaintiff's Cellular Telephone. *See* Exs. A and B.

91. Defendant's conduct served no purpose other than to annoy and harass Plaintiff into paying the Debt by continuing to impermissibly and unlawfully call Plaintiff's Cellular Telephone in an attempt to collect the Debt, despite Plaintiff's repeated demands that such calls cease and Plaintiff's repeated requests that such communications be directed to his attorneys

92. Defendant's willful, flagrant and vulgar violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

93. Moreover, the context of Defendant's calls—having occurred after multiple instances where Plaintiff revoked consent to be called both in writing and orally—constitute harassment as is contemplated under Florida Statutes, Section 559.72(7).

94. As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## COUNT TWO:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## <u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)</u>

Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

95. Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing actual knowledge that Plaintiff retained legal counsel with respect to the Debt and after possessing such legal counsels' contact information.

96. Specifically, Plaintiff repeatedly provided Defendant with actual knowledge that he was represented by legal counsel with respect to the Debt and provided such legal counsels' contact information through both the Fax of Representation and the Certified Letter of Representation. *See* Exs. A and B.

97. Despite Defendant possessing actual knowledge of Plaintiff's representation by legal counsel with respect to the Debt and despite Defendant possessing said legal counsels' contact information, Defendant continued to make calls directly to Plaintiff's Cellular Telephone in an attempt to collect the Debt since January 2017 and such calls are continuing as of the date of this Complaint.

98. As such, Defendant attempted to collect the Debt directly from Plaintiff despite knowing that Plaintiff retained legal counsel with respect to the Debt in violation of Florida Statutes, Section 559.72(18).

99. As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## COUNT THREE:
## TELEPHONE CONSUMER

**PROTECTION ACT AND THE FCC RULE-
VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)
AND 47 CODE OF FEDERAL REGULATION, SECTION 64.1200(a)(1)**

Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

100. Defendant is subject to, and violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an ATDS, PTDS, or APV to make a call a telephone number assigned to a cellular telephone service despite lacking Plaintiff's prior express consent.

101. Defendant is also subject to, and violated the provisions of, 47 Code of Federal Regulation, Section 64.1200(a)(1) by using an ATDS, PTDS, or APV to make a call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

102. At no material time herein did Defendant possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, and/or an APV.

103. If Defendant contends it possessed such consent, Plaintiff revoked any such purported consent each and every time Plaintiff requested that Defendant cease calling Plaintiff regarding the Debt, and also revoked any such purported consent each and every time Plaintiff advised Defendant that he retained legal counsel with respect to the Debt. *See* Exs. A. and B.

104. Additionally, if Defendant contends the above-referenced phone calls were made for "informational purposes only," it nevertheless lacked the required prior express consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

105. Between January 2017 and continuing through the filing of this Complaint, despite lacking Plaintiff's prior express consent and despite Plaintiff repeatedly requesting that Defendant cease calling him regarding the Debt, Defendant continues to repeatedly call Plaintiff's Cellular

Telephone using an ATDS, PTDS, or APV.

106. The telephone calls made by Defendant complained of herein are the result of a repeated willful and knowing violation of the TCPA.

107. Moreover, the phone calls made by Defendant complained of herein are the result of a repeated willful and knowing violation of the FCC Rule.

108. As a direct and proximate result of Defendant's conduct, Plaintiff suffered:

  a. The periodic loss of his Cellular Telephone service and the cost associated therewith;

  b. Lost material costs associated with the use of peak time minutes allotted under his Cellular Telephone service contract; and

  c. Stress, anxiety, frustration, and invasion of privacy, as a result of the repeated willful and knowing calls placed in violation of the TCPA and the FCC Rule.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

  a. Judgment against Defendant declaring that Defendant violated the FCCPA;

  b. Judgment against Defendant for maximum statutory damages for violations of the FCCPA;

  c. Judgment providing injunctive relief, prohibiting Defendant from further engaging in conduct that violates the FCCPA, the TCPA, and the FCC Rule;

  d. Judgment against Defendant for statutory damages in the amount of $500.00 for each of Defendant's telephone calls that violated the TCPA and/or FCC Rule;

  e. Judgment against Defendant for treble damages in the amount of an

additional $1,000.00 for each telephone call that violated the TCPA and/or the FCC Rule for which Defendant acted knowingly and/or willfully;

    f.    Actual damages in an amount to be determined at trial;

    g.    Punitive damages in an amount to be determined at trial;

    h.    An award of attorneys' fees and costs; and

    i.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

    Respectfully submitted,

    **LEAVENLAW**

    /s/ *Gregory H. Lercher*
    ☐ **Ian R. Leavengood, Esq., FBN 0010167**
    **[X] Gregory H. Lercher, Esq., FBN 0106991**
    ☐ **Sean E. McEleney, Esq., FBN 0125561**
    Northeast Professional Center
    3900 First Street North, Suite 100
    St. Petersburg, FL 33703
    Phone: (727) 327-3328
    Fax: (727) 327-3305
    consumerservice@leavenlaw.com
    glercher@leavenlaw.com
    smceleney@leavenlaw.com
    *Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA )
)
COUNTY OF Duval )

Plaintiff STEPHEN KNUTH, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_____
STEPHEN KNUTH

Subscribed and sworn to before me
this 3 day of January, 2019.

Alondria Williams _____
Notary Public

My Commission Expires: _____

Proof of I.D.: Passport _____



ALONDRIA A WILLIAMS
State of Florida-Notary Public
Commission # GG 252920
My Commission Expires
August 27, 2022